IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| STEPHANIE VANHOUTEN,<br><br>Plaintiff,<br><br>v.<br><br>GVC MORTGAGE, INC., d/b/a BAILEY & WOOD FINANCIAL GROUP, SCOTT SAYLOR, STEVE HOSTETTER, MIKE WOOD, and CORY WALRADTH,<br><br>Defendant. | CASE NO.: 1:25-cv-00351-HAB-ALT |

## SECOND AMENDED COMPLAINT

Stephanie VanHouten brings this action against GVC Mortgage, Inc., d/b/a Bailey & Wood Financial Group, for breach of contract, for defamation, for violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), violation of Indiana Civil Rights Law (ICRL), and violation of Indiana's Blacklisting Statute ("Blacklisting Statute"), to correct unlawful intentional discrimination and harassment directed against her on the basis of her sex; to remedy unlawful intentional retaliation against her for engaging in statutorily protected activity; to remedy the unlawful prevention of her subsequent employment; to remedy for breach of contract; to remedy damages caused by defamatory statements. VanHouten further brings this action against the individuals, Scott Saylor, Steve Hostetter, Mike Wood, and Cory Walradth, for statements constituting defamation per se. To provide appropriate relief, VanHouten states as follows.

1

## PARTIES

1. Stephanie Van Houten ("VanHouten") is a female who resides in Whitley County, Indiana.

2. GVC Mortgage, Inc. ("GVC"), is a for profit corporation organized under the laws of the state of Indiana, with its principal place of business in Madison County, Indiana, at 600 Corporation Drive, Suite 200, Pendleton, IN, 46064.

3. GVC operates under the name "Bailey & Wood Financial Group" ("B&W") with an office located in Allen County, 10514 Coldwater Road, Fort Wayne, Indiana 46845.

4. GVC is an employer subject to Title VII and ICRL.

5. VanHouten was an employee of GVC subject to the Title VII and ICRL.

6. Scott Saylor is an individual and resident of the state of Indiana.

7. Steve Hostetter is an individual and resident of the state of Indiana.

8. Mike Wood is an individual and resident of the state of Indiana.

9. Cory Walradth is an individual and resident of the state of Indiana.

## JURISDICTION

10. The Court has jurisdiction to hear this case pursuant to 28 U.S.C. §1331.

11. This Court is the proper venue for this case pursuant to 28 U.S.C. §1391.

12. VanHouten timely filed a charge with the Fort Wayne Metropolitan Human Relations Commission against GVC d/b/a Bailey & Wood Financial Group.

13. VanHouten received a notice of right to sue on March 12, 2025, and has timely filed the Complaint.

## FACTUAL ALLEGATIONS

14. VanHouten was hired by GVC in approximately March of 2021.

15. GVC hired VanHouten as a Mortgage Loan Originator.

16. VanHouten and GVC agreed upon the terms of her employment in a Mortgage Loan Originator Employment Agreement. The agreement and all terms therein are attached hereto as Exhibit 1 and incorporated by reference into this Complaint.

17. At all times relevant, VanHouten worked for GVC's office in Fort Wayne, Indiana, doing business as "Bailey and Wood Financial Group" ("B&W").

18. During her employment, VanHouten met, or exceeded, all legitimate performance expectations of B&W.

19. VanHouten's business expanded rapidly after she started at B&W and her loan origination volume quickly outpaced most other Loan Originator's working for GVC in Indiana.

20. VanHouten's volume was so high that it became difficult, if not impossible, for her one assistant, Amanda Ditzler, to keep up with VanHouten's loan originations.

21. In November of 2021, GVC management approved VanHouten's request to hire a second assistant and her second assistant, Emma Justice, was hired January 24, 2022.

22. As a tool for motivation and teamwork, VanHouten used the moniker "Team Elite" to refer to herself, her assistants, and her overall business as a Loan Originator. Using a team title is common in the industry.

23. At a company holiday party on January 13, 2023, VanHouten and Team Elite won two awards: Top 3 Team and Rising Star.

24. In March 2023, without any prior discussions, B&W management began

discussing the need to reduce the size of Team Elite due to "performance numbers."

25. On March 8, 2023, Stephanie requested a credit pull for B&W's Loan Originators to determine why there was suddenly the need to cut her second assistant's position. B&W management refused to provide these numbers.

26. Instead, B&W management advised VanHouten that she had a couple of months to ramp up numbers, with no metrics or goals discussed, to prove that her second assistant was warranted.

27. On March 27, 2023, Stephanie again requested the credit pull for B&W's Loan Originators to determine what numbers would be sufficient to warrant a second assistant so that she could set a reasonable goal. Management yet again refused to provide these numbers.

28. On March 28, 2023, well short of the two-month deadline imposed by management, B&W announced that VanHouten's second assistant, Emma Justice, would be moved to a new position.

29. Throughout the time she worked for GVC, VanHouten's loan volume remained higher than most other loan originators in the office.

30. One other loan originator – a male – who had equivalent or fewer loan originations than VanHouten had more than one assistant.

31. In September of 2023, Scott Saylor, the managing loan originator in the Fort Wayne office, organized a meeting to discuss team conduct. At the meeting Saylor invited other employees to take shots of alcohol and allowed them to make hostile comments and personal attacks toward VanHouten.

32. In October of 2023, various employees began "ranking" male employees' genitals

at a company event. The conversation was in front of and audible to management of B&W who laughed.

33. On November 1, 2023, VanHouten was recognized as the top producer for all of GVC (B&W and other offices) for October 2023.

34. In November 2023, Saylor asked B&W management for some of VanHouten's clients to be moved to his books.

35. B&W management approved the transfer of VanHouten's client to Saylor, effectively taking business and income opportunities from VanHouten.

36. No reason for the transfer was communicated to VanHouten and GVC had no written policy for this process.

37. On December 12, 2023, VanHouten was contacted by a realtor who wanted her clients moved from Saylor to VanHouten.

38. VanHouten reported the request to management to have the transfer processed in the same manner they had for the transfer of her client to Saylor that occurred in November.

39. Saylor discovered the request and angrily stomped around the office and demanded that VanHouten's assistant, Amanda Ditzler, contact her. Saylor also sent Van Houten hostile and insulting text messages.

40. B&W management did not transfer Saylor's clients to VanHouten, despite their request.

41. The next day, on December 13, 2023, Saylor barged into VanHouten's office and verbally harassed and intimidated her saying "you're dead to me." As Saylor left her office, he shouted to VanHouten's coworkers "I'm sorry you have to deal with her and her shit."

42. Van Houten emailed human resources regarding these events, informed them that she felt unsafe in the office and requested to work from home until such time as Scott Saylor's behavior was addressed and management permitted her to do so.

43. Before VanHouten's request to work from home, it was not uncommon for originators at B&W to work from home for a variety of reasons.

44. On December 15, 2023, B&W and GVC managers requested to speak with VanHouten, which she accepted. The meeting was scheduled for December 19, 2023.

45. On December 18, 2023, VanHouten filed a Charge of Discrimination with the Fort Wayne Metropolitan Human Relations Commission claiming sexual harassment and discrimination. VanHouten provided a copy to GVC's human resource professional.

46. After VanHouten provided the copy of the charge, GVC and B&W managers cancelled the meeting that was scheduled for the next day.

47. No one in management at B&W or GVC ever discussed the behavior or Scott Saylor with VanHouten to allay her fears.

48. Saylor was not subject to any discipline for his behavior toward VanHouten.

49. On December 29, 2023, while VanHouten was working from home, B&W management allowed another loan originator to move into VanHouten's office, which was posted on B&W's Facebook page.

50. On January 3, 2024, B&W management scheduled a Teams meeting with Amanda Ditzler. Mike Wood, B&W Founder, and Cory Walradth, Sales Manager, used the meeting to diminish and insult VanHouten's work behind her back to Ditzler. Specifically, they made false statements about VanHouten's work, including that it was clear that she, Ditzler, not

VanHouten, was the one doing all the work for Team Elite's success and that VanHouten didn't know how to do her job.

51. The next day, on January 4, 2024, Cory Walradth and Ed Warrington, Sales Manager, approached Ditzler. They talked about VanHouten's salary, informed Ditzler that VanHouten had implicated them in her charge of discrimination and also told Ditzler to think about her future and family when deciding what to do.

52. Thereafter, in January 2024, industry partners and real estate agents that VanHouten knew professionally informed her that Steve Hostetter and Scott Saylor told them that she had filed a lawsuit against B&W, had cleaned out her desk, and was no longer working at B&W. Specifically, this was said to Clint Morgan, Mallory Kessler, Theo Bishop, Andy Milentis, Brittany Grabner, Doug Carroll and Amber Gaskill,

53. On January 12, 2024, Steve Hostetter and Scott Saylor told Amber Gaskill and Jen Luke that VanHouten was an untrustworthy loan officer and that they should cease working with her.

54. Further, Jen Luke, who was employed with a title company VanHouten worked with, reported that Steve Hostetter and Scott Saylor informed her that, unless they wanted to be included in any lawsuits pertaining to VanHouten, they should only support B&W in public.

55. On January 17, 2024, VanHouten was locked out of the Usherpa database – a software that sends automated marketing emails and branding communications – and no marketing materials were sent on VanHouten's behalf. This cessation impacted Van Houten's income and number of active loans.

56. On February 6, 2024, VanHouten came into possession of a flyer from B&W

7

titled "Meet Our Team" which was used to identify B&W loan originators. VanHouten was the only mortgage consultant based in Fort Wayne who was not included on this flyer.

57. On February 6, 2024, and February 9, 2024, B&W management failed to invite VanHouten to two industry networking events. Other B&W loan originators were invited.

58. On Monday, February 19, 2024, VanHouten received a letter from B&W informing her that she was suspended and that her last day with B&W would be Friday, February 23, 2024.

59. After her termination, VanHouten's role was filled by a younger male.

60. During the recruitment process, B&W management, including Scott Saylor, Steve Hostetter, Mike Wood, and Cory Walradth, informed candidates that VanHouten was not a team player, created a toxic work environment, and was difficult to work with, and also stated that she did not complete her own work, and that her assistant did all of her work. None of which is true.

61. All of these allegations came only after she submitted a Charge of Discrimination.

62. On April 5, 2024, Steve Hostetter spoke with, Amber Gaskill, an employee of Trademark Title saying, "Think about it, a company does not fire a high producing loan officer, #3 in the company, that is making a company a ton of money, unless she did something really bad. Really, really bad. I really need you to think about it and question why we fired her."

63. After being terminated from GVC d/b/a B&W, multiple loans that VanHouten originated were finalized and funded. GVC has failed to pay VanHouten the compensation that is due to her on those loans under the terms of the contract attached hereto as Exhibit 1.

## COUNT I - BREACH OF CONTRACT

64. VanHouten incorporates by reference paragraphs 1 through 63 as if

fully restated here.

65. VanHouten and B&W entered into a Mortgage Loan Originator Compensation Agreement with GVC, the terms of which are fully incorporated herewith and attached as Exhibit 1.

66. GVC has failed to pay VanHouten in accordance with the terms of that contract.

67. GVC is liable to VanHouten for compensatory damages and pre-judgment interest.

**COUNT II - TITLE VII & ICRL**
**DISCRIMINAION BASED ON SEX**

68. VanHouten incorporates by reference paragraphs 1 through 67 as if fully restated here.

69. GVC treated VanHouten in a discriminatory manner, in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e-2, and in violation of Indiana Civil Rights Law (ICRL), Ind. Code § 22-9-1-1 *et seq*.

70. GVC's actions and omissions described above constitute different terms, conditions and benefits of employment that were provide to VanHouten, as compared to those provided to male loan originators similarly situated to her.

71. GVC and acted willfully in violation of Title VII and ICRL.

72. GVC is liable to VanHouten for compensatory damages, emotional distress, economic loss, loss of reputation, punitive damages and attorney fees and costs.

## COUNT III - TITLE VII & ICRL
## HOSTILE WORK ENVIRONMENT

73. VanHouten incorporates by reference paragraphs 1 through 72 as if fully restated here.

74. GVC, through its management and employees, subjected VanHouten to a hostile work environment because of her sex in violation of Title VII and ICRL.

75. The hostile behavior was so severe and pervasive that it created an abusive work environment.

76. VanHouten reported the hostility to GVC, but it took no remedial action.

77. GVC acted willfully in violation of Title VII and ICRL.

78. GVC is liable to VanHouten for compensatory damages, emotional distress, economic loss, loss of reputation, punitive damages and attorney fees and costs.

## COUNT IV – TITLE VII & ICRL
## RETALIATION

79. VanHouten incorporates by reference paragraphs 1 through 78 as if fully restated here.

80. VanHouten complained of discrimination and harassment to GVC and filed a charge of discrimination for the same with the Fort Wayne Metropolitan Human Right Commission.

81. Her complaint was protected by Title VII, 42 USCS § 2000e-3, and ICRL, Ind. Code § 22-9-1-6(g).

82. GVC retaliated against VanHouten for exercising her statutory rights under Title VII and ICRL by discharging her from employment and by subjecting her

to other materially adverse action prior to termination.

83. GVC acted willfully in violation of Title VII and ICRL when it retaliated against VanHouten.

84. GVC is liable to VanHouten for compensatory damages, emotional distress, economic loss, loss of reputation, punitive damages and attorney fees and costs.

## COUNT V - BLACKLISTING

85. VanHouten incorporates by reference paragraphs 1 through 84 as if fully restated here.

86. Statements made by GVC employees, including Scott Saylor, Steve Hostetter, Mike Wood, and Cory Walradth (collectively "GVC employees"), about VanHouten, violated Ind. Code § 22-5-3-1 - Disclosure of information after employee's discharge.

87. The GVC employees were acting in the course and scope of their employment when they made the statements.

88. GVC is liable to VanHouten for compensatory damages and exemplary (i.e. punitive) damages.

## COUNT VI – DEFAMATION PER SE

89. VanHouten incorporates by reference paragraphs 1 through 88 as if fully restated here.

90. Statements made by GVC employees, including Scott Saylor, Steve Hostetter, Mike Wood, and Cory Walradth, (collectively "GVC employees"), were made in the course and scope of their employment.

91. Statements made by GVC employees about VanHouten, constitute defamation

per se.

92. The GVC employees acted in concert to damage VanHouten's professional reputation and diminish her ability to find other employment in the mortgage industry.

93. GVC is liable to VanHouten for compensatory and punitive damages.

### COUNT VII – DEFAMATION PER SE (Individual Liability)

94. VanHouten incorporates by reference paragraphs 1 through 93 as if fully restated here.

95. In the alternative, should GVC deny that the statements made by the GVC employees were made in the course and scope of their employment, or otherwise deny vicarious liability for the statements by Scott Saylor, Steve Hostetter, Mike Wood, and Cory Walradth, those employees are individually liable to VanHouten.

96. Scott Saylor made false and defamatory statements to third parties, as described above, regarding Vanhouten and is liable to VanHouten for compensatory and punitive damages.

97. Steve Hostetter made false and defamatory statements to third parties, as described above, regarding Vanhouten and is liable to VanHouten for compensatory and punitive damages

98. Mike Wood made false and defamatory statements to third parties, as described above, regarding Vanhouten and is liable to VanHouten for compensatory and punitive damages

99. Cory Walradth made false and defamatory statements to third parties, as described above, regarding Vanhouten and is liable to VanHouten for compensatory and punitive damages

**WHEREFORE**, Stephanie VanHouten respectfully requests relief from this Court including, but not limited to, compensatory damages; loss of income; emotional distress; loss of

reputation; impairment of earning capacity; punitive damages; pre-judgment interest, to the extend applicable; attorney fees and costs; and all other relief that is just and proper.

Respectfully submitted,

BECKMAN LAWSON, LLP

By: */s/ Megan M. Torres*
Matthew J. Elliott, #21242-02
melliott@beckmanlawson.com
Megan M. Torres, #31540-02
mtorres@beckmanlawson.com
201 West Wayne Street
Fort Wayne, IN  46802
Telephone:    (260) 422–0800
Facsimile:     (260) 420–1013
ATTORNEYS FOR PLAINTIFF

### DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

BECKMAN LAWSON, LLP

By: */s/ Megan M. Torres*
Matthew J. Elliott, #21242-02
melliott@beckmanlawson.com
Megan M. Torres, #31540-02
mtorres@beckmanlawson.com
201 West Wayne Street
Fort Wayne, IN  46802
Telephone:    (260) 422–0800
Facsimile:     (260) 420–1013
ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

The undersigned certifies that on the 31th day of December, 2025, the foregoing document was electronically filed using the Indiana E-Filing System (IEFS). The undersigned further certifies that a true copy of the foregoing document was served upon the following person(s) via IEFS or U.S. Mail, postage pre-paid.

    GVC Mortgage, Inc., d/b/a
    Bailey & Wood Financial Group
    Attn: Registered Agent, John Kirk
    600 Corporation Dr., Ste 200
    Pendleton, IN 46064

    /s/ Megan M. Torres
    Megan M. Torres